1

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Timothy K. Owens,                    No. CV-14-2443-TUC-DCB-DTF

10                    Petitioner,          **REPORT AND**
                                           **RECOMMENDATION**
11   v.

12   Charles L. Ryan, et al.,

13                    Respondents.

14

15          Petitioner Timothy Owens, presently incarcerated at the Arizona State Prison-

16   Cimarron Unit, in Tucson, Arizona, has filed a Petition for Writ of Habeas Corpus

17   pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the Court, this

18   matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before

19   this Court are the Petition (Doc. 1), Respondents' Answer (Docs. 13-14), and Petitioner's

20   Reply (Doc. 29). The Magistrate Judge recommends that the District Court, after its

21   independent review of the record, grant relief as to one claim and deny the remainder of

22   the claims.

23                    **FACTUAL AND PROCEDURAL BACKGROUND**

24          Owens was convicted in the Superior Court of Pima County of twenty-two

25   felonies: illegally conducting an enterprise, conspiracy to commit unlawful possession

26   and/or transportation of a dangerous drug for sale, six counts of possession of a

27   dangerous drug for sale, possession of a dangerous drug, possession of a motor vehicle

28   with an altered serial number or identification number, possession of a deadly weapon

during the commission of a felony drug offense, possession of drug paraphernalia, three counts of use of a wire communication in a drug-related transaction, attempted unlawful use of a means of transportation, first-degree burglary, kidnapping, two counts of soliciting threats and intimidation, solicitation to commit kidnapping, and solicitation to commit first-degree murder. (Doc. 13, Ex. UU at 1-2.)

The Arizona Court of Appeals, interpreting the facts in the light most favorable to sustaining Owens's convictions, summarized the background facts as follow:

On June 29, 2004, a Tucson Police Department (TPD) officer discovered two vehicles with altered vehicle identification numbers outside Owens's residence. Pursuant to a search warrant, TPD later searched Owens's house and seized, inter alia, one pound of methamphetamine, a scale, two shotguns, at least four rifles, a handgun, a submachine gun, and ammunition. Owens then fled to Mexico.

¶ 3 On July 24, 2004, a TPD officer stopped Donna Greenwell, an associate of Owens's, for a traffic violation. After an officer's dog alerted, indicating Greenwell had drugs, an officer searched Greenwell and her vehicle, seizing a large amount of methamphetamine and a ledger. The ledger documented eight hundred to nine hundred drug sales and purchases occurring between December 2003 and January 2004. The ledger indicated Owens had repeatedly sold large quantities of methamphetamine to Greenwell during that period.

¶ 4 While in Mexico, Owens regularly supplied methamphetamine to a Tucson methamphetamine retailer and also continued to supply methamphetamine to Greenwell. On November 7, 2004, while attempting to smuggle drugs across the border with R., the security guard for the person retailing the drugs in Tucson, Owens was arrested. The day following his arrest, Owens made several telephone calls from jail, which were recorded and played for the jury at trial. During the calls, Owens instructed several people to sell his methamphetamine to raise money for his bail.

¶ 5 After leaving Greenwell's residence on January 1, 2005, Owens was stopped by a TPD officer because the officer believed Owens had a suspended driver's license. Owens admitted possessing methamphetamine and was arrested. About three weeks later, Owens went to C.'s home, looking for her husband. After discovering C.'s husband was not there, Owens broke a window on C.'s family's vehicle and attempted to steal it. Owens fled when C. called the police, but he called C. that evening, threatening to "f-her up" for having called the police. Owens was arrested the following day.

¶ 6 On January 26, 2005, while at Greenwell's house, Owens recruited several associates to "do[ ] a job" for him in exchange for some methamphetamine. One of the associates, M., testified at trial. The associates were to help Owens collect chemicals and debts T. and E. owed him. The following day, Owens and several of the associates, while armed, kidnapped T. from his house. The entire group then went to E.'s house. E.

was not there, and the group broke into the house and looted it. While the group was loading E.'s belongings into a pickup truck, Pima County Sheriff's deputies arrived. The deputies arrested Owens and his associates and seized various weapons from them, including brass knuckles and guns.

¶ 7 Owens later made several telephone calls from the Pima County Jail, which were recorded and played at trial. On January 27, 2005, Owens called an associate and told him about methamphetamine he was keeping "in a room on 19th." Owens called another associate on February 6, discussing sending his "friends" and others to collect from several debtors. At a later court appearance, Owens handed an associate a note, instructing him to have T., T.'s wife, and E. killed.

¶ 8 In March 2005, Owens solicited a fellow inmate, S., to collect money from several of his debtors, giving him a map and handwritten instructions. Owens instructed S. to take the debtors to the desert to kill them and/or steal their cars if they were uncooperative or unable to pay. After deciding not to retain S., Owens unsuccessfully attempted to recruit a second inmate to collect the debts, including taking pictures of what he did to the debtors.

(*Id.* at 2-4.)

On appeal, counsel raised five claims. (Doc. 13, Ex. OO.) The Arizona Court of Appeals affirmed Owens's convictions and sentences. (*Id.*, Ex. UU.)

Owens filed a notice for post-conviction relief (PCR). (*Id.*, Ex. WW.) Appointed counsel raised two ineffective assistance of counsel (IAC) claims. (*Id.*, Ex. ZZ.) In addition, the court allowed Owens to file a supplemental petition, in which he raised ten claims. (*Id.*, Ex. EEE.) The PCR court denied relief, finding the IAC claims to be without merit and the supplemental claims to be precluded because they could have been raised on appeal. (*Id.*, Ex. HHH.) The Court of Appeals granted review but denied relief. (*Id.*, Exs. III, JJJ, LLL.) The Arizona Supreme Court denied review. (*Id.*, Exs. MMM, NNN, OOO.)

Owens filed a second notice of PCR, and then filed a petition raising three claims. (*Id.*, Exs. PPP, SSS.) The PCR court denied the petition. (*Id.*, Ex. UUU.) The Arizona Court of Appeals adopted that ruling and also found all of the claims untimely. (*Id.*, Ex. XXX.) The state supreme court denied review. (*Id.*, Ex. ZZZ.)

## DISCUSSION

Owens raises twenty-two claims in his Petition. Respondents concede that Claims 4, 7, and 8 are properly exhausted and the Court will review them on the merits.

1   Respondents contend the other claims are procedurally barred, and the Court first reviews

2   them for proper exhaustion.

3   **EXHAUSTION AND PROCEDURAL DEFAULT**

4   PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

5   A writ of habeas corpus may not be granted unless it appears that a petitioner has

6   exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v.*

7   *Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly

8   present" the operative facts and the federal legal theory of his claims to the state's highest

9   court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848

10   (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-

11   78 (1971).

12   In Arizona, there are two primary procedurally appropriate avenues for petitioners

13   to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas

14   petitioner's claims may be precluded from federal review in two ways. First, a claim may

15   be procedurally defaulted in federal court if it was actually raised in state court but found

16   by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30.

17   Second, a claim may be procedurally defaulted if the petitioner failed to present it in state

18   court and "the court to which the petitioner would be required to present his claims in

19   order to meet the exhaustion requirement would now find the claims procedurally

20   barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th

21   Cir. 1998) (stating that the district court must consider whether the claim could be

22   pursued by any presently available state remedy). If no remedies are currently available

23   pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted.

24   *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62

25   (1996).

26   Because the doctrine of procedural default is based on comity, not jurisdiction,

27   federal courts retain the power to consider the merits of procedurally defaulted claims.

28   *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a

procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

<u>ANALYSIS OF EXHAUSTION AND PROCEDURAL DEFAULT</u>

**Claim 1**

Owens alleges the trial court erred in denying his motion to suppress evidence. In particular, Owens alleges the trial court relied on unsworn testimony in issuing a search warrant.

This Fourth Amendment claim is not subject to review by this Court. In *Stone v. Powell*, 428 U.S. 465, 494 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Pursuant to *Stone*, a prerequisite for consideration of Owens's Fourth Amendment claim is the denial of the chance to fully and fairly litigate the claim in state court.

Owens contends he was not afforded a full and fair opportunity to litigate this claim because the trial court did not hold an evidentiary hearing. Based on the record, the Court disagrees. The trial court held a hearing, at which defense counsel stated the decision was solely legal in nature and testimony was irrelevant. (Doc. 13, Ex. I at 3-4.) After the court denied the motion to suppress, defense counsel filed a motion to reconsider. (*Id.*, Ex. J.) That motion was based solely on the standard of review; therefore, no evidentiary hearing was warranted for the motion to reconsider. (*Id.*) This claim is barred from review in this Court based on *Stone*.

**Claim 2**

Owens alleges the trial court violated his Sixth and Fourteenth Amendment rights by admitting Donna Greenwell's ledger as a business record.

1    Owens raised a factually similar claim on direct appeal but it was based solely on

2    state evidentiary law and did not fairly present a federal constitutional claim (Doc. 13,

3    Ex. OO at 50-57). *See Gray*, 518 U.S. at 163. "If a habeas petitioner wishes to claim that

4    an evidentiary ruling at a state court trial denied him the due process of law guaranteed

5    by the Fourteenth Amendment, he must say so, not only in federal court, but in state

6    court." *Duncan v. Henry*, 513 U.S. 364, 366 (1995). The court of appeals ruling was

7    based solely on state evidentiary rules. (Doc. 13, Ex. UU at 11-14.)

8    Owens cited a few federal cases in his appellate brief (Doc. 13, Ex. OO at 52, 54,

9    55); however, he did not alert the state court to a specific federal constitutional violation.

10   *See Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004); *Lyons v. Crawford*, 232 F.3d

11   666, 670 (2000), *as amended by* 247 F.3d 904 (9th Cir. 2001) (general reference to

12   insufficiency of evidence, right to be tried by impartial jury, and ineffective assistance of

13   counsel lacked specificity and explicitness required). Owens relied on the cases for

14   interpretation of the Arizona Rules of Evidence. The Supreme Court has explicitly

15   rejected the argument that similarity between a state claim alleged in state court and an

16   un-asserted federal claim satisfies the exhaustion requirement. *Duncan*, 513 U.S. at 366.

17   The Court finds that Claim 2 was not fairly presented as a federal constitutional issue on

18   direct appeal. *See O'Sullivan*, 526 U.S. at 845.

19   Subsequently, Owens raised a Sixth Amendment claim based on the same facts in

20   his supplemental PCR petition but the court found it precluded under Arizona Rule of

21   Criminal Procedure 32.2(a)(3) because he could have raised it on direct appeal. (Doc. 13,

22   Ex. EEE at 6-16; Ex. HHH at 12-13.) The court of appeals affirmed that decision. (*Id.*,

23   Ex. LLL at 7.) Claims that were fairly presented in state court but found defaulted on

24   state procedural grounds will be procedurally defaulted in federal court if the state

25   procedural bar was independent of federal law and adequate to warrant preclusion of

26   federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). Rule 32.2(a)(3) is

27   independent of federal law, *see Stewart v. Smith*, 536 U.S. 856, 860 (2002), and the Ninth

28   Circuit has repeatedly determined that Arizona regularly and consistently applies its

procedural default rules such that they are an adequate bar to federal review of a claim. *See Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (finding Rule 32.2(a)(3) regularly followed and adequate); *Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) (same).

**Claim 3**

Owens alleges the trial court violated his Sixth and Fourteenth Amendment rights by allowing Detective Kivi to testify as an expert beyond the scope of a pretrial ruling. Owens raised a factually similar claim on direct appeal but it was based solely on state evidentiary law and did not fairly present a federal constitutional claim (Doc. 13, Ex. OO at 57-68). *See Gray*, 518 U.S. at 163. The court of appeals ruling was based solely on state evidentiary rules. (Doc. 13, Ex. UU at 14-20.)

Owens's appellate brief included a lengthy discussion of a Ninth Circuit case (Doc. 13, Ex. OO at 63-68); however, he did not alert the state court to a specific federal constitutional violation. *See Casey,* 386 F.3d at 913; *Lyons*, 232 F.3d at 670. Instead, Owens relied on that case for its interpretation of the federal rules of evidence to support his argument based on the Arizona Rules of Evidence. (Doc. 13, Ex. OO at 63-68.) The Federal Rules of Evidence have no applicability in state court and, therefore, provide no basis for relief for a state criminal defendant. The Supreme Court has explicitly rejected the argument that similarity between a state claim alleged in state court and an un-asserted federal claim satisfies the exhaustion requirement. *Duncan*, 513 U.S. at 366. More importantly, the federal rules of evidence are not synonymous with a federal constitutional right. In fact, Owens's brief relied on a harmless error standard because the error alleged was "not of constitutional magnitude." (Doc. 13, Ex. OO at 68.) Citation to federal cases which do not analyze the federal constitutional issue is insufficient to fairly alert the state court to a federal constitutional claim. *See Castillo v. McFadden*, 399 F.3d 993, 1001 (9th Cir. 2005); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). The Court finds that Claim 3 was not fairly presented as a federal constitutional issue in state court and, accordingly, Owens has not properly exhausted this claim. *See O'Sullivan*, 526 U.S. at 845.

1    If Owens were to return to state court now to litigate this claim it would be found

2    waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal

3    Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P.

4    32.2(b); 32.1(d)-(h). This claim is technically exhausted but procedurally defaulted.

5    **Claims 5, 12 and 13**

6    In Claim 5, Owens alleges there was insufficient evidence to sustain his

7    convictions on Counts 5, 7, 8, 13,[1] and 15-21 of the indictment. In Claim 12, Owens

8    alleges there was insufficient evidence to convict him on Counts 7, 8, and 19-21 of the

9    indictment. In Claim 13, Owens alleges there was insufficient evidence to sustain his

10   conviction on Count 17 of the indictment. He also alleges trial and appellate counsel were

11   ineffective for failing to raise the allegations in Claims 12 and 13.

12   Owens challenged his convictions as to Counts 19, 20, and 21 on direct appeal, but

13   solely as a matter of state law. (Doc. 13, Ex. OO at 72-73.) The appellate court ruled on

14   the claim based solely on state law. (*Id.*, Ex. UU at 23.) Thus, Owens did not fairly

15   present any of these claims on direct appeal.

16   In his supplemental PCR petition, Owens argued, similarly to Claim 12, that there

17   was insufficient evidence as to Counts 7, 8, and 19-21. (Doc. 13, Ex. EEE at 19-21.)

18   Owens also argued in that PCR proceeding, similarly to Claim 13, that there was

19   insufficient evidence for Count 17 and the court should have granted a directed verdict on

20   that charge. (*Id.* at 21-22.) Owens did not fairly present a federal basis for either of these

21   claims to the PCR court or the court of appeals. (Doc. 13, Ex. EEE at 19-22; Ex. JJJ at

22   15-16.) The PCR court found these claims precluded under Arizona Rule of Criminal

23   Procedure 32.2(a)(3) because Owens could have raised them on direct appeal. (Doc. 13,

24   Ex. HHH at 12-13.) The court of appeals affirmed that decision. (*Id.*, Ex. LLL at 7.)

25   Owens presented no claim in state court challenging the sufficiency of the

26   evidence as to Counts 5, 13, 15, 16, or 18 of the indictment. He also never presented in

27

28   _____

[1] Although Owens references Count 9 (which charged use of wire communication in drug related transaction), he discusses the kidnapping charge, which is Count 13.

state court a claim that trial or appellate counsel was ineffective for failing to challenge the sufficiency of the evidence as to any counts.[2] To the extent he challenged Counts 7, 8, 17, and 19-21 of the indictment, he did not do so based on federal law. In sum, Owens failed to fairly present Claims 5, 12, or 13 to the state courts as federal claims.

If Owens were to return to state court now to litigate these claims they would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because they do not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). These claims are technically exhausted but procedurally defaulted.

**Claim 6**

Owens alleges appellate counsel was ineffective because he did not include all of the issues Owens wanted raised on appeal; in particular, counsel did not raise the ten claims Owens included in his supplemental PCR petition.

Owens did not assert IAC of appellate counsel in any of his PCR petitions (Doc. 13, Exs. ZZ, EEE, SSS). (*See supra* note 2 (raising IAC in a reply brief did not fairly present the claim).)  If Owens were to return to state court now to litigate this claim it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). This claim is technically exhausted but procedurally defaulted.

**Claim 9**

Owens alleges that a partial superseding indictment replaced the original and by proceeding on both indictments the trial court violated his rights under the Fifth, Sixth,

---

[2] In his reply brief to his supplemental PCR petition, Owens argued that none of the post-conviction claims were precluded because his trial and/or appellate counsel were ineffective for failing to raise them. (Doc. 13, Ex. GGG at 4-7.) He also argued IAC of appellate counsel in his petition for review. (*Id.*, Ex. JJJ at 2-4.) To the extent Owens was trying to raise an independent IAC claim, claims raised for the first time in a reply brief are waived. *State v. Lopez*, 221 P.3d 1052, 1054, 223 Ariz. 238, 240 (Ct. App. 2009). The court of appeals noted this rule when denying his petition for review from denial of his PCR petition. (Doc. 13, Ex. LLL at 4 n.2.) Thus, Owens's discussion in a reply brief of IAC to overcome preclusion did not fairly present these IAC claims to the state courts.

and Fourteenth Amendments. Owens also alleges that appellate counsel was ineffective for failing to raise this claim on appeal.

Owens raised this claim regarding the indictments in his supplemental PCR petition. (Doc. 13, Ex. EEE at 1-6.) The PCR court found the claim precluded under Arizona Rule of Criminal Procedure 32.2(a)(3) because Owens could have raised it on direct appeal. (Doc. 13, Ex. HHH at 12-13.) The court of appeals affirmed that decision. (*Id.*, Ex. LLL at 7.) This was an independent and adequate state procedural ground, which bars this portion of the claim from review in this Court.

Owens never fairly presented a claim of IAC of appellate counsel. (*See supra* note 2 (raising IAC in a reply brief did not fairly present the claim).) If Owens were to return to state court now to litigate this IAC claim it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). This portion of the claim is technically exhausted but procedurally defaulted.

**Claim 10**

Owens alleges his rights under the Confrontation Clause of the Sixth Amendment were violated by the trial court's admission of Donna Greenwell's ledger without her testimony.

Owens raised this claim in his supplemental PCR petition. (Doc. 13, Ex. EEE at 6-17.) The PCR court found the claim precluded under Arizona Rule of Criminal Procedure 32.2(a)(3) because Owens could have raised it on direct appeal. (Doc. 13, Ex. HHH at 12-13.) The court of appeals affirmed that decision. (*Id.*, Ex. LLL at 7.) This was an independent and adequate state procedural ground, which bars the claim from review in this Court.

**Claim 11**

Owens alleges his trial and appellate counsel were ineffective for failing to challenge a warrantless search of his yard.

1    Owens never raised this claim in state court. In his supplemental PCR petition,

2    Owens alleged that his Fourth Amendment rights were violated by the warrantless search

3    of his yard. However, he did not assert a related IAC claim. (*See supra* note 2 (raising

4    IAC in a reply brief did not fairly present the claim).) Therefore, Owens never fairly

5    presented these claims of IAC of trial and appellate counsel. If Owens were to return to

6    state court now to litigate these IAC claims, they would be found waived and untimely

7    under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it

8    does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h).

9    This claim is technically exhausted but procedurally defaulted.[3]

10   **Claims 14, 15, 16, and 18**

11   In Claim 14, Owens alleges the prohibition against double jeopardy was violated

12   as to Count 33 of the indictment. In Claim 15, Owens alleges his right to due process and

13   a fair trial were violated because a biased juror participated in his trial. In Claim 16,

14   Owens alleges his Sixth Amendment rights were violated when police officers questioned

15   him without his attorney. In Claim 18, Owens alleges his constitutional rights were

16   violated by the denial of requested jury instructions. As to each of the claims, Owens also

17   alleges he received ineffective assistance of trial and/or appellate counsel because one or

18   both of his counsel failed to raise these issues.

19   Owens raised the underlying claims in his supplemental PCR petition. (Doc. 13,

20   Ex. EEE at 23-28, 29-31.) The PCR court found the claims precluded under Arizona Rule

21   of Criminal Procedure 32.2(a)(3) because Owens could have raised them on direct

22   appeal. (Doc. 13, Ex. HHH at 12-13.) The court of appeals affirmed that decision. (*Id.*,

23   Ex. LLL at 7.) This was an independent and adequate state procedural ground, which bars

24   these claims from review in this Court.

25   _____

26   [3] To the extent Owens intended Claim 11 to include the underlying Fourth Amendment claim regarding the warrantless search, the PCR court and the appellate

27   court found the claim precluded under Arizona Rule of Criminal Procedure 32.2(a)(3). (Doc. 13, Ex. HHH at 12-13; Ex. LLL at 7.) Therefore, that claim would be procedurally

28   barred in this Court.

Owens never fairly presented the IAC claims as to trial or appellate counsel. (*See supra* note 2 (raising IAC in a reply brief did not fairly present the claim).) If Owens were to return to state court now to litigate these IAC claims they would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because they do not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). These claims are technically exhausted but procedurally defaulted.

The entirety of Claims 14, 15, 16, and 18 are procedurally defaulted.

**Claim 17**

In Claim 17, Owens alleges his sentence was unconstitutional. He also asserts that his trial and appellate counsel were ineffective for failing to raise this claim.

Owens raised a factually similar claim regarding his sentence in his supplemental PCR petition but asserted only that it was illegal under state statutes. (Doc. 13, Ex. EEE at 28-29.) The PCR court and the court of appeals found the claim precluded for failure to raise it on direct appeal. (*Id.*, Ex. HHH at 12-13; Ex. LLL at 7.) In his supplemental PCR petition, at the end of his claim regarding his sentence, Owens also alleged: "(This was not raised by trial or appellate counsel.)" This cursory statement did not fairly present a claim of ineffective assistance of counsel. Nor was it fairly presented by Owens's mention of IAC in his reply brief to his supplemental petition. (*See supra* note 2.)

Owens never fairly presented any portion of Claim 17 to the state courts, neither a federal claim regarding his sentence nor IAC. If Owens were to return to state court now to litigate these claims they would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because they do not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). These claims are technically exhausted but procedurally defaulted.[4]

---

[4] Even if the Court found Owens had fairly presented a federal claim regarding his sentence, that portion of the claim would be defaulted because the state court found the claim as presented to be precluded.

- 12 -

1

**Claims 19 and 21**

2      In Claim 19, Owens argues he received IAC on PCR under *Martinez v. Ryan*,

3   because his PCR counsel failed to allege trial IAC at the plea bargaining stage. In Claim

4   21, Owens alleges his PCR counsel was ineffective because Owens did not waive his

5   argument that trial counsel was ineffective at the plea bargaining stage. As to both Claims

6   19 and 21, Owens argues his appellate counsel was ineffective for failing to raise these

7   claims.

8      "The ineffectiveness or incompetence of counsel during . . . State collateral post-

9   conviction proceedings shall not be a ground for relief in a proceeding arising under

10  section 2254." 28 U.S.C. § 2254(i). Therefore, Owens's claims of IAC on PCR are not

11  cognizable in this proceeding.[5] With respect to Owens's claims of IAC on appeal, they

12  have no merit. Because Owens's direct appeal was complete before he began his first

13  PCR proceeding, it was not possible for appellate counsel to raise any claims about PCR

14  counsel.

15     **Claim 20**

16     Owens alleges trial counsel was ineffective in advising him about an offered plea

17  deal and in failing to obtain a *Donald* hearing. He also alleges appellate counsel was

18  ineffective for failing to raise this claim.

19     Owens alleged this IAC at trial claim in his second PCR petition. (Doc. 13, Ex.

20  SSS at 7-9.) The PCR court found the claim precluded because Owens could have raised

21  it during his first PCR proceeding. The appellate court upheld the PCR court's ruling and

22  also found the second PCR petition untimely. (*Id.*, Ex. XXX at 3-4.) The Arizona

23  Supreme Court denied review. (*Id.*, Exs. YYY, ZZZ.) The appellate court's ruling was an

24  independent and adequate state procedural ground, which bars the claim from review in

25  this Court.

26

27   _____

28     [5] A claim of ineffective assistance of PCR counsel also is not cognizable before
     the Arizona courts. *See State v. Escareno-Meraz*, 307 P.3d 1013, 232 Ariz. 586 (Ct. App.
     2013).

1        With respect to Owens's claim of IAC on appeal, it has no merit. Because IAC

2   claims are not properly raised on appeal but must be brought in a PCR proceeding, *see*

3   *State v. Spreitz*, 39 P.3d 525, 527, 202 Ariz. 1, 3 (2002), Owens's appellate counsel was

4   not ineffective for failing to raise an IAC claim.

5       **Claim 22**

6        Owens alleges he should have been granted an evidentiary hearing on his IAC

7   claims during his PCR proceedings. Alleged errors in the PCR process are not cognizable

8   in a federal habeas corpus proceeding because they do not attack the lawfulness of a

9   petitioner's detention. *See Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per

10  curiam) (finding allegations of error in state post-conviction review process non-

11  cognizable); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997). Therefore, this

12  claim is not cognizable.

13       Owens also alleges appellate counsel was ineffective for failing to raise this claim

14  on direct appeal. Because Owens's direct appeal was complete before he began his first

15  PCR proceeding, it was not possible for appellate counsel to raise any claims about his

16  PCR proceeding. Therefore, this claim is without merit.

17      <u>CAUSE AND PREJUDICE</u>

18       The Court has found that Claims 2, 3, 5, 6, 9-18, and 20 are procedurally

19  defaulted. Ordinarily "cause" to excuse a default exists if a petitioner can demonstrate

20  that "some objective factor external to the defense impeded counsel's efforts to comply

21  with the State's procedural rule." *Coleman*, 501 U.S. at 753. Although Owens did not use

22  the terms cause and prejudice, he argued repeatedly that the default of any claims was

23  due to ineffective assistance of trial, appellate, or PCR counsel.

24       As an initial matter, failure to exhaust did not occur at the trial court level. Rather,

25  exhaustion should have occurred on appeal or in Owens's first PCR proceeding.

26  Therefore, any conduct on the part of trial counsel cannot serve as cause for the failure to

27  properly exhaust the claims in state court. To the extent Owens asserted the fault of his

28  trial counsel as to specific claims, the Court does not address it below.

**Claims 2, 3, 5, 10, and the non-IAC portions of Claims 9 and 12-18**

These are record-based claims that should have been raised, if at all, on direct appeal. As to claims 2, 3, and 5, Owens argues he is not responsible for their default; rather, appellate counsel was ineffective for failing to seek review of these claims in the state supreme court. (Doc. 29 at 7, 16.) Proper exhaustion does not require that claims be raised to the Arizona Supreme Court and these claims are not procedurally defaulted for that reason. *See Swoopes v. Sublett*, 196 F.3d 1008, 1011 (9th Cir. 1999). Thus, failure to raise claims to the supreme court cannot operate as cause.

As to Claim 10 and the non-IAC portions of Claims 9 and 12-18, Owens alleges appellate counsel was ineffective for failing to properly raise these claims. As to Claims 2, 3, and 5, it is not apparent that Owens is asserting that appellate counsel was ineffective for failing to fairly present them to the court of appeals. However, the Court will evaluate IAC on appeal as a possible basis for cause as to all these claims.

Before ineffectiveness of appellate counsel may be used to establish cause for a procedural default, it must have been presented to the state court as an independent claim. *Murray*, 477 U.S. at 489. Owens did not properly exhaust in a PCR petition a claim that appellate counsel was ineffective for failing to fairly present Claims 2, 3, 5, 10, or the non-IAC portions of Claims 9 and 12-18 (Doc. 13, Exs. ZZ, EEE, SSS). (*See supra* note 2 (raising IAC in a reply brief did not fairly present the claim).) Ineffectiveness claims regarding counsel are now foreclosed in state court by Arizona Rule of Criminal Procedure 32.2(a)(3) and 32.4(a). Because the Arizona state courts have not had a fair opportunity to rule on Owens's ineffectiveness of appellate counsel claims alleged as cause, and Owens may not exhaust these claims now, they are technically exhausted but procedurally defaulted. *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1. Therefore, Owens's allegation of IAC on appeal cannot operate as cause (to excuse the default of Claims 2, 3, 5, 10, or the non-IAC portions of Claims 9 and 12-18) unless he establishes cause and prejudice to excuse the default of the appellate IAC claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (ineffective counsel as cause can itself

be procedurally defaulted). Owens has made no argument that there is cause to excuse the default of a claim that his appellate counsel was ineffective for failing to fairly present these claims. Therefore, IAC on appeal cannot operate as cause to excuse the default of Claims 2, 3, 5, 10, or the non-IAC portions of Claims 9 and 12-18.

### Claims 6, 11, 20, and the IAC portions of Claims 9 and 12-18

These claims, which allege ineffective assistance of trial and/or appellate counsel, should have been raised, if at all, in Owens's first PCR proceeding. There is no constitutional right to PCR counsel, thus, the Sixth Amendment is not implicated when counsel is ineffective in such a proceeding. However, because a PCR proceeding is the first time in Arizona that IAC at trial or on appeal may be raised, if PCR counsel is ineffective pursuant to the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), in failing to raise a trial or appellate IAC claim, that may constitute cause to excuse a default of that claim. *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012); *Ha Van Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013). The Ninth Circuit has concluded that an allegation that PCR counsel was ineffective, as cause to excuse the default of an IAC claim, does not have to be exhausted. *See Dickens v. Ryan*, 740 F.3d 1302, 1322 (9th Cir. 2014).

To establish "cause" to overcome procedural default under *Martinez,* a petitioner must show: (1) the underlying ineffective assistance of [ ] counsel claim is "substantial"; (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the state PCR proceeding was the initial review proceeding for the IAC claim; and (4) state law required the petitioner to bring that claim in the initial review collateral proceeding. *Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013). There is no dispute as to elements 3 or 4 in this case. To demonstrate that an underlying IAC claim is "substantial," Owens must show that it has some merit. *Martinez*, 132 S.Ct. at 1319 (noting a claim is insubstantial if it has no merit, is "wholly without factual support," or counsel's performance was not below constitutional standards). A substantial claim is one as to which "reasonable jurists could debate whether . . . the petition should have been

resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013). To evaluate substantiality, the Court necessarily considers the essence of Owens's ineffective assistance of trial and appellate counsel claims. Accordingly, the Court examines the merits of Owens's defaulted IAC claims below.

Standard for IAC claims

IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88.

The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* "A failure to raise untenable issues on appeal does not fall below the *Strickland* standard." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).

Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1          Claim 6

2          Owens alleges appellate counsel was ineffective because he did not raise the

3    claims Owens included in his supplemental PCR petition.

4          Claims 9 and 11-18 of Owens's Petition before this Court allege that appellate

5    counsel was ineffective for failing to raise nine of the ten claims from his supplemental

6    PCR petition (claims 1 and 3-10). Below, the Court reviews the merits of Claims 9 and

7    11-18; therefore, the Court does not repeat the analysis here.

8          Claim 2 of the supplemental PCR petition alleged that Owens's rights, under the

9    Sixth Amendment and the Arizona and federal rules, were violated by the introduction of

10   Donna Greenwell's ledger without her testimony. First, the federal rules have no

11   application in the Arizona courts; thus, Owens's appellate counsel was not ineffective for

12   failing to assert a claim premised on those rules. Second, appellate counsel challenged,

13   unsuccessfully, the admissibility of the ledger under state evidentiary rules (Doc. 13, Ex.

14   OO at 50-57; Ex. UU at 11-14); therefore, he was not ineffective for failing to raise this

15   portion of the claim.

16         Third, the Court turns to Owens's allegation that appellate counsel failed to

17   challenge the admission of the ledger based on a violation of his rights under the

18   Confrontation Clause. Subject to proper foundation and authentication, Greenwell's

19   ledger was admitted by the trial court as a business record (and as a co-conspirator

20   statement). (Doc. 13, Ex. X (06/30/2006).) The appellate court affirmed the ruling that

21   the ledger was properly admitted under state rules as a business record. (*Id.*, Ex. UU at

22   11-14). In *Crawford v. Washington*, the Supreme Court noted that business records were

23   not testimonial in nature and, therefore, did not implicate the Confrontation Clause. 541

24   U.S. 36, 56 (2004); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)

25   (noting that business records are generally not testimonial because they are created for

26   the administration of a person's affairs not to prove a fact at trial). Because admission of

27   the ledger did not violate the Confrontation Clause, appellate counsel was not ineffective

28   for failing to raise this claim.

1    Finally, within claim 2 of the supplemental PCR petition, Owens also makes a

2 cursory argument that his rights were violated because Mitch Thomas and Chris Ellis did

3 not testify. Ellis and Thomas were the victims in Counts 12 (burglary) and 13

4 (kidnapping), respectively. Owens points to no testimonial violation due to the absence of

5 Thomas and Ellis. There is no requirement that the victim of a crime must testify.

6 Because Owens has not alleged that the absence of Thomas and Ellis violated any

7 identifiable right, appellate counsel was not ineffective for failing to raise these claims.

8    In sum, Owens has not established a reasonable probability that claim 2 of his

9 supplemental PCR petition would have been meritorious if raised on appeal. Therefore,

10 Owens cannot establish that he was prejudiced by counsel not raising this issue on

11 appeal. Owens's claim of IAC on appeal is not substantial and also fails on the merits.

12    <u>Claim 9</u>

13    Owens alleges appellate counsel was ineffective for failing to challenge the trial

14 court proceeding on both the partial superseding and the original indictment. Owens

15 contends his constitutional right to a grand jury was violated, and the trial court did not

16 have jurisdiction over the counts in the original indictment.

17    Owens was charged with numerous felonies, along with multiple other defendants,

18 in a 102-count indictment returned by an Arizona grand jury on August 30, 2005. (Doc.

19 13, Ex. A.) On August 10, 2006, a grand jury returned a partial superseding indictment

20 against three defendants, including Owens, on Counts 1, 2, and 104 (Count 103 was

21 added as to another defendant and Count 36 was amended as to other defendants). (*Id.*,

22 Ex. M.)

23    First, contrary to Owens's argument, he was not deprived of the right to a grand

24 jury. A grand jury returned an indictment as to all the counts on which he was tried.

25 Further, indictment by grand jury, pursuant to the Fifth Amendment, is not one of the due

26 process guarantees applicable to state criminal defendants. *Branzburg v. Hayes*, 408 U.S.

27 665, 688 n.25 (1972) (citing *Hurtado v. California*, 110 U.S. 516 (1884)).

28

1    Second, there is no Arizona law holding that a partial superseding indictment

2    replaces a prior indictment in the same case. To the contrary, cases indicate that a second

3    indictment does not void the original indictment. *See Ceasar v. Campbell*, 236 Ariz. 142,

4    144-46 (Ct. App. 2014).

5    In sum, Owens has not established a reasonable probability that this claim would

6    have been meritorious if raised on appeal. Therefore, Owens cannot establish that he was

7    prejudiced by counsel not raising this issue. Owens's claim of IAC on appeal is not

8    substantial and also fails on the merits.

9    Claim 11

10    Owens alleges trial and appellate counsel were ineffective for failing to challenge

11    a warrantless search of his yard. Owens asserts officers searched his yard and checked

12    VIN numbers on vehicles. A woman gave permission for them to search the vehicles and

13    Owens alleges she did not have that authority. The information obtained in that search

14    was used to obtain a search warrant.

15    When an officer contacted a judge to obtain a search warrant, he stated that he was

16    investigating unlawful use of a means of transportation, alteration and/or removal of a

17    VIN, a vehicle with a VIN removed or defaced. (Doc. 13, Ex. H, Attach. at 1.) He

18    indicated that the vehicles were in the front yard of a home. (*Id.* at 2, 3; *see also* Ex. AA

19    at 36-37.) The officer attested, "[a]s they went to speak with the resident they looked at a

20    vin plate . . . . They noticed that it had been tampered with . . . . They spoke to the female

21    at the residence who told them that they could look at the vehicles." (*Id.* at 2.)

22    To establish that counsel's performance was unreasonable, Owens must

23    demonstrate that a challenge to the search of his yard would have been successful.

24    *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). This he has failed even to allege.

25    Because the cars were in an unfenced residential front yard, it is not evident he had a

26    reasonable expectation of privacy in the VINs attached to the cars. *See United States v.*

27    *Dunn*, 480 U.S. 294, 301 (1987) (finding that outdoor space may not be so "intimately

28    tied to the home" that it is protected as within the curtilage when it is unenclosed and the

1   resident has taken no effort to protect it from the view of passersby); *New York v. Class*,

2   475 U.S. 106, 114 (1986) (finding no expectation of privacy in a VIN). Further, Owens

3   has not alleged that it was unreasonable for the officers to believe the woman that

4   consented to the search had authority to do so. *See Illinois v. Rodriguez*, 497 U.S. 177,

5   186, 188 (1990).

6          Owens's claim of IAC at trial and on appeal is not substantial and also fails on the

7   merits.

8          Claim 12

9          Owens alleges trial and appellate counsel were ineffective for failing to argue that

10  there was insufficient evidence to convict him on Counts 7, 8, and 19-21 of the

11  indictment because there was no physical evidence of the drugs to be tested. Counts 7, 8,

12  and 19-21 of the indictment charged Owens with unlawful possession of a dangerous

13  drug for sale, to wit: methamphetamine over the threshold amount, pursuant to A.R.S.

14  § 13-3407. Section 3407(A) provides that a "person shall not knowingly: . . . 2. Possess a

15  dangerous drug for sale." The statutory "threshold amount" for methamphetamine is nine

16  grams. A.R.S. § 13-3401(36)(e). As to these counts, the state's evidence of the existence

17  and quantity of methamphetamine was based on testimony (including calls Owens made

18  from jail) and entries in Greenwell's ledger.

19         The jury was given the following relevant instructions, which Owens does not

20  assert to be erroneous:

21          Evidence can be either direct or circumstantial . . . Circumstantial evidence
            is the proof of a fact from which the existence of another fact may be
22          inferred. You must determine the weight to be given to all the evidence
            without regard to whether it's direct or circumstantial.
23

24                  . . . .

25          The crime of possession of a dangerous drug for sale requires proof that:
            One, the defendant was aware or believed that he or she possessed a
26          dangerous drug; and two, the substance was in fact a dangerous drug; and
            three, it was a usable amount of a dangerous drug. It is a usable amount if it
27          is of such quality and quantity that it could be used according to the
            practices of users of dangerous drugs; and four, the possession was for the
28          purpose of sale.

                    . . . .

1

2

> If you find the defendant guilty of possession of a dangerous drug for sale . . . you'll then be asked to determine the weight of the dangerous drug.

3

> "Weight" includes the entire weight of any mixture or substance that contains a detectable amount of an unlawful substance.

4

5

(Doc. 13, Ex. DD at 124, 131, 133.) The forms of verdict the jury received as to Counts

6

7, 8, and 19-21 included a question for the jury to answer – whether the amount of

7

methamphetamine possessed was less than nine grams or equal to or more than nine

8

grams. (*Id.* at 146, 149-50.) As to each of these counts, the jury found Owens guilty of

9

the charge and determined the amount of methamphetamine was 9 grams or more. (*Id.*,

10

Ex. EE at 39, 42.)

11

Owens argues testing of the drugs was required by A.R.S. § 13-3420. Section

3420 provides:

12

13

14

15

16

17

18

> For purposes of determining if the threshold amount is equaled or exceeded in any single offense or combination of offenses, a percentage of each substance listed by weight in § 13-3401, or any fraction thereof to its threshold amount is equaled or exceeded. If the total of the percentages established equals or exceeds one hundred percent, the threshold amount is equaled or exceeded. If the threshold amount is equaled or exceeded because of the application of this subsection, the person shall be sentenced as if the combination of unlawful substances consisted entirely of the unlawful substance of the greatest proportionate amount. If there are equal proportionate amounts, the person shall be sentenced as if the unlawful substances consisted entirely of the unlawful substance constituting the highest class of offense.

19

Nothing in this statutory provision requires the weighing or testing of a physical

20

substance. It merely provides a method for evaluating whether the threshold amount is

21

met for cases in which any single unlawful substance is below the threshold.

22

The statute does not provide a basis to find there was insufficient evidence on

23

which to convict Owens on Counts 7, 8, or 19-21. Owens does not argue there was

24

insufficient circumstantial evidence for the jury to have concluded he possessed nine or

25

more grams of methamphetamine on each of the dates charged in the indictment.

26

Therefore, the Court need not recount the evidence upon which the jury could have relied

27

for that verdict. However, having read the trial transcripts, the Court concludes a

28

1    reasonable juror could have found Owens guilty as to these counts.[6] *See State v. Miles*,

2    123 P.3d 669, 675, 211 Ariz. 475, 481 (Ct. App. 2006) (holding that a claim alleging

3    insufficient evidence for a criminal charge will be successful only if, viewing the

4    evidence in the light most favorable to upholding the verdict, there is not substantial

5    evidence to support the conviction). Because there is no merit to Owens's argument –

6    that he could not have been convicted on Counts 7, 8, and 19-21 because no physical

7    drugs were tested or weighed – his counsel was not ineffective for failing to raise this

8    argument.

9         Owens's claim of IAC at trial and on appeal is not substantial and also fails on the

10   merits.

11        Claim 13

12        Owens alleges trial and appellate counsel were ineffective for failing to assert that

13   there was insufficient evidence to sustain his conviction on Count 17 of the indictment,

14   solicitation to commit first degree murder.

15        In Arizona, a claim alleging insufficient evidence for a criminal charge will be

16   successful only if, viewing the evidence in the light favorable to upholding the verdict,

17   there is not substantial evidence to support the conviction. *Miles*, 123 P.3d at 675, 211

18   Ariz. at 481. "'Substantial evidence'" is 'evidence that reasonable persons could accept

19   as sufficient to support a guilty verdict beyond a reasonable doubt.'" *State v. Fimbres*,

20   213 P.3d 1020, 1024, 222 Ariz. 293, 297 (Ct. App. 2009) (quoting *State v. Stroud*, 209

21   Ariz. 410, 411-12, 103 P.3d 912, 913-14 (2005)). The trial court or appellate court will

22   find "insufficient evidence 'only if there is a complete absence of probative facts to

23   support [the jury's] conclusion.'" *Miles*, 123 P.3d at 675, 211 Ariz. at 481 (quoting *State

24   v. Carlisle*, 198 Ariz. 203, 206, 8 P.3d 391, 394 (Ct. App. 2000)); *State v. Mathers*, 796

25   P.2d 866, 868, 165 Ariz. 64, 66 (1990) (applying the same standard for a Rule 20 motion

26   for acquittal at trial).

27   _____

28        [6] Below, the Court determines Count 7 is invalid because it is duplicative of Count
     8; however, the Court finds there was sufficient evidence upon which the jury could
     convict Owens for one or the other of these counts.

1    Count 17 of the indictment charged, "[o]n or about March 16, 2005, Timothy

2  Kevin Owens, solicited another to commit murder of Rojelio Robles a.k.a. "Gordo." The

3  jury instructions set forth the elements for solicitation to commit first degree murder:

> [T]he defendant: One, intended to promote or facilitated the commission of
> first degree murder; and two, encouraged, commanded, requested or
> solicited another person to engage in specific conduct that would constitute
> first degree murder.
>
> The crime of first degree murder requires proof that: One, the
> defendant caused the death of another person; and two, the defendant
> intended or knew he would cause the death of person; and three, the
> defendant acted with premeditation.

9  (Doc. 13, Ex. DD at 137-38.) Owens alleges the state failed to prove that he solicited the

10  murder of Gordo (although he does not dispute that there was sufficient evidence that he

11  solicited the murder of Manny).

12    Owens proposed to a fellow inmate, Richard Shonk, that he collect debts on his

13  behalf. Owens gave Shonk a note, which included the following:

> Manny, 5458 E. Willard 6200 + int. 10000 + collect 15000
> Brother in law Gordo 2484296 2000 + int 3000 or so collect 4500.00
> The Guy from Mex 16750 +20000+ collect 30000
> Make Manny tell where Gordo is. Gordo has lots of cash. No English.
> Manny does.
> Take the Nissan Alt. from Manny for Mexico."

17  (Doc. 13, Ex. DDDD.) At trial, Shonk testified that Owens instructed him to go to

18  Manny's house and force him to call Gordo for money. If he didn't get any money from

19  Manny and Gordo, he was supposed to put Manny into the Nissan Altima, take him out to

20  the desert and "do what I had to do," which meant kill him. (Doc. 13, Ex. CC at 46, 51-

21  52, 53, 60, 80-82.) Shonk initially testified that the person he was supposed to kill was

22  Gordo but then later stated he had meant Manny. (*Id.* at 51, 53.) In talking about Manny,

23  Shonk testified that Owens told him, "Take him out. You know, I said, well, how the hell

24  am I supposed to do that, and he says, like, dude, figure it out. I mean, to me that's like

25  kill them both . . ." (*Id.* at 99.)

26    In a recorded phone call with his dad, while discussing Owens, Shonk said, "He's

27  already gave [sic] me a list of a couple of people that he wants me to hit for him, he

28  wants me to kill them . . . . I've already got their names. I've got it all in his handwriting

on about everything he wants done, how much money he wants collected and everything . . . . I got a thing with his handwriting asking me to kill people for him." (*Id.* at 95-96.) Detective Mawhinney interviewed Shonk, and asked him "So the only one that you were supposed to basically rough up was Manny?" and Shonk replied, "If he gave me any shit, yeah." (*Id.* at 108.)

During closing arguments, the prosecutor argued that Owens solicited Shonk to kill Manny and Gordo, "kill them both." (Doc. 13, Ex. DD at 41-42, 120.) Owens's attorney argued that there was evidence only that Owens solicited Shonk to kill Manny, not Gordo as was stated in the indictment. (*Id.* at 81-82.) The Court of Appeals summarized the facts supporting Count 17 as: "Owens instructed S. to take the debtors to the desert to kill them and/or steal their cars if they were uncooperative or unable to pay."

There was evidence a reasonable person could accept to find Owens guilty of soliciting Shonk to commit the first degree murder of Gordo. Shonk's reference to "kill them both" is ambiguous, as a juror could have inferred that he was talking about Manny's wife or Gordo. A reasonable person could have concluded that Owens solicited Shonk to kill Manny <u>and</u> Gordo. In support of this conclusion, Shonk told his father that Owens had asked him to kill "a couple of people," those listed in the note Owens gave him, which included Manny and Gordo. (Doc 13, Ex. CC at 95-96.) Neither the trial court nor the appellate court would have granted a claim based on insufficient evidence because there was not a total absence of probative facts to support the verdict. This finding is supported by the Arizona Court of Appeals conclusion that Owens solicited the murder of multiple "debtors."

Further, an indictment "shall be deemed amended to conform to the evidence adduced at any court proceeding," to correct a mistake of fact or remedy a formal defect. Ariz. R. Crim. P. 13.5(b). If Owens's counsel had raised a claim that there was insufficient evidence for this count, the courts could have deemed the indictment amended to allege solicitation to murder Manny. A defect is considered formal and subject to amendment if it does not change the nature of the offense nor prejudice the

defendant. *State v. Barber*, 653 P.2d 29, 34, 133 Ariz. 572, 577 (Ct. App. 1982). A court evaluates whether the defendant had notice of the charges against him and if acquittal of the amended charge would provide a double jeopardy defense to the original charge. *Id.* Here, amendment would have been proper. Owens had notice of the charge – that, on or about March 16, 2005, he had solicited Shonk to commit murder in conjunction with debt collection. Further, acquittal of the amended charge for solicitation to murder Manny would have provided a double jeopardy defense to prosecution for solicitation to murder Gordo because it involved soliciting Shonk on a specific date to commit murder.

Because a claim of insufficient evidence as to Count 17 would not have been successful, Owens's counsel was not ineffective for failing to raise this claim. Owens's claim of IAC at trial and on appeal is not substantial and also fails on the merits.

<u>Claim 14</u>

Owens alleges trial and appellate counsel were ineffective for failing to raise the prohibition against double jeopardy as to Count 33, which became Count 7 in the indictment presented to the jury.

Owens was indicted in Counts 7 and 8 for activity involving drugs on November 7, 2004. (Doc. 13, Ex. A (referred to in this original indictment as Counts 33 and 34).) Count 7 charged transportation/importation of dangerous drugs for sale (methamphetamine), and Count 8 charged possession of dangerous drugs for sale (methamphetamine). (*Id.*) Owens moved to dismiss Count 8, arguing that possession for sale is a lesser-included charge of transportation for sale. (*Id.*, Ex. C.) The State agreed to amend the indictment so that Count 7 charged only importation not transportation, which Owens agreed eliminated the double jeopardy problem. (*Id.*, Ex. EEEE at 14-15.)

In argument to the jury, counsel discussed Count 7 as charging importation (*Id.*, Ex. Z at 14-18; Ex. DD at 29-30, 108-12), as did the jury instructions (*Id.*, Ex. DD at 126, 131-32). However, the form of verdict for Count 7 asked the jury to find Owens guilty or not guilty of the offense of "POSSESSION OF A DANGEROUS DRUG FOR SALE as alleged in Count Seven of the Indictment," not importation. (Doc. 13, Ex. JJ.) Moreover,

the form of verdict for Count 8 was identical to Count 7, in that it alleged the same "POSSESSION OF A DANGEROUS DRUG FOR SALE." (*Id.*) The court entered judgment on Count 7 as possession of a dangerous drug for sale committed on November 7, 2004, not importation. (Doc. 13, Ex. MM at 4-5.) The court entered judgment for the same crime as to Count 8. (*Id.* at 5.) Ultimately, the Court sentenced Owens twice for these duplicate offenses, not for one count of possession and one count of importation. (*Id.* at 14; Ex. NN at 6-7.)

Owens's sentences for Counts 7 and 8 constitute multiple punishments for the same offense, which is unquestionably precluded by the double jeopardy clause. *See Brown v. Ohio*, 432 U.S. 161, 165 (1977). Respondents argue that it is pure conjecture to suggest the jury was confused by the wording of the verdict form, in light of the evidence and argument presented at trial. Their argument misses the point because the jury twice found Owens guilty of the same offense and it was those duplicate charges on which he was sentenced. Respondents argue persuasively as to Owens's guilt of importation, however, that is inconsequential to his double jeopardy claim.

Respondents failed to address the posture of the claim currently before the Court. The relevant question is whether, after Owens was sentenced in violation of the double jeopardy clause, counsel's failure to raise the issue was objectively unreasonable. The Court finds that it was. If trial or appellate counsel had raised this claim, it would have been successful on the merits. Thus, his counsel's performance was ineffective and he suffered actual prejudice from counsel's deficient actions.

Respondents' arguments do not undermine this conclusion. First, they cite no authority for their assertion that an appellate court would have revised the judgment to find Owens guilty of importation as charged. *Cf. State v. Montano*, No. 1CA-CR 14-0060, 2015 WL 770325, *3 (Ct. App. Feb. 24, 2015) (revising judgment to remove dangerous nature offense designation because the jury *did not make such a finding*). In fact, the Arizona Court of Appeals has used the statute cited by Respondents, A.R.S. § 13-4036, to vacate a conviction that violated double jeopardy. *State v. Merrick*, No.

1CA-CR 11-0549, 2012 WL 4955425, *2 (Ariz. Ct. App. Oct. 18, 2012). Statutory sections 13-4036 and 13-4037 do not provide a basis to conclude that an appellate court would have revised the judgment to enter a conviction not imposed by a jury. Second, Respondents have no authority for their argument that the outcome would not have been different because Owens would still be subject to five other life sentences. The Arizona Court of Appeals holds that when a defendant is sentenced twice for the same offense, one of the sentences must be vacated even if they were imposed concurrently and did not increase the length of imprisonment. *See State v. Brown*, 177 P.3d 878, 882-83, 217 Ariz. 617, 621-22 (Ct. App. 2008).

In finding that the underlying claims of trial and appellate IAC are meritorious, the Court necessarily finds that PCR counsel was deficient in failing to raise these substantial claims. *See Detrich v. Ryan*, 740 F.3d 1237, 1245-46 (9th Cir. 2013). Therefore, there is cause to excuse the default of the IAC portion of Claim 14. *Id.* And, the Court finds it wins on the merits.

Claim 15

Owens alleges appellate counsel was ineffective in failing to raise a claim that his right to due process and a fair trial were violated because a biased juror participated in his trial.

During deliberations, a juror reported to the bailiff that she was concerned she had been followed the prior night by Owens's sons, and she had reported it to the police. (Doc. 13, Ex. EE at 9, 12-13, 18.) The bailiff instructed her not to discuss it with any of the jurors and she told the court she had not done so. (*Id.* at 10, 12.) She was not confident she was followed and she stated it might have been "a weird coincidence" that made her nervous. (*Id.* at 14, 15.) She noticed two young white guys driving in front of her, in the same type of car she had seen Owens's sons sitting on outside the courthouse, but even if it was them she did not think they could connect her to the vehicle she was driving. (*Id.* at 13, 15, 18.) The juror stated several times that she could continue to fairly deliberate in the case. (*Id.* at 15, 19, 20.)

1   In Arizona:

2   [j]uror misconduct necessitates "a new trial only if 'the defense shows
3   actual prejudice or if prejudice may be fairly presumed from the
    facts.'" *State v. Davolt,* 207 Ariz. 191, 208 ¶ 58, 84 P.3d 456, 473
4   (2004) (quoting *State v. Miller,* 178 Ariz. 555, 558, 875 P.2d 788, 794
    (1994)) (emphasis and internal citation omitted). "In a criminal case,
5   prejudice may be presumed from 'any private communication, contact, or
    tampering directly or indirectly, with a juror during a trial about the matter
6   pending before the jury.'" *Id.* (quoting *Remmer v. United States,* 347 U.S.
    227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954)). But "[p]rejudice cannot be
7   presumed without the requisite showing that the jury received and
    considered extrinsic evidence on the issues." *Id.* ¶ 59.

8   *State v. Nelson*, 273 P.3d 632, 636, 229 Ariz. 180, 184 (2012). Here, the juror was not

9   certain she was followed and, if she was, she did not know if the people were affiliated

10  with Owens or if they could connect her with the vehicle she was travelling in. This juror

11  affirmed that she could deliberate without being affected by the event and that she did not

12  relay any of this information to the other jurors. Therefore, there is not a reasonable

13  probability this claim would have succeeded if raised on appeal.

14      Owens's claim of IAC on appeal is not substantial and also fails on the merits.

15      Claim 16

16      Owens alleges trial and appellate counsel were ineffective in failing to allege that

17  his Sixth Amendment rights were violated when police officers questioned him without

18  his attorney. As alleged by Owens, Pima County Sherriff investigators interviewed him

19  on March 17, 2005, while he was being held in jail. Because Owens was represented by

20  counsel at that time, he argues it violated his rights to question him without his attorney

21  present.[7]

22      When a related claim was raised on appeal, the appellate court made the following

23  finding:

24      ¶ 34 At the beginning of the interview, Owens plainly waived his right to
25      remain silent. "To satisfy *Miranda,* the State must show that appellant

26  _____

27      [7] As discussed below in Claim 4, the officers informed Owens that they wanted to
    talk to him about something other than the charges on which he was currently being held
28  in jail. Ultimately, the indictment was amended to include charges related to the topic of
    the jail interview.

1
2
3
4
5
6
7

> understood his rights and intelligently and knowingly relinquished those rights before custodial interrogation began." *State v. Tapia,* 159 Ariz. 284, 286-87, 767 P.2d 5, 7-8 (1988). Before the interview began, the interviewing officer advised Owens of his constitutional rights and asked Owens if he understood them. Owens nodded affirmatively. The officer then handed Owens a document and asked him if he wanted to talk about it. Owens responded, "Sure" and, when asked, admitted the document was in his handwriting. Owens identifies nothing in the record that suggests he did not understand his rights. *See id.*

(*Id.*, Ex. UU.)

A defendant has a Sixth Amendment right to counsel during interrogation. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). However, he may waive that right, if he does so voluntarily, knowingly, and intelligently. *Id.* "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* Thus, it is not determinative that Owens was represented by counsel, "[w]hat matters for *Miranda* and *Edwards* is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation." *Id.* at 797.

Owens's claim that his rights were violated simply by interrogation in the absence of his attorney is legally erroneous. As found by the Arizona Supreme Court, and discussed more thoroughly below with respect to Claim 4, Owens voluntarily waived his right to counsel after being read his *Miranda* rights. Finally, Owens has not alleged and there is no record evidence that he invoked his right to counsel at any time during the interrogation. Because Owens validly waived his right to have counsel present during the interrogation, his counsel was not ineffective for failing to challenge the absence of counsel.

Owens's claim of IAC at trial and on appeal is not substantial and also fails on the merits.

<u>Claim 17</u>

Owens alleges trial and appellate counsel were ineffective for failing to challenge his unconstitutional sentence on Counts 3, 7, 8, 19, 20, and 21. In particular, he alleges

1   his sentence was illegal because the "state proceeded under 13-3419 but sentenced

2   pursuant to 13-3410." (Doc. 1 at 22.)

3        As an initial matter, Owens cites no support for his assertion that the state was

4   proceeding under § 3419. In contrast, months before trial, the State filed two Allegations

5   of Serious Drug Offense under A.R.S. § 13-3410 (A) & (B). (Doc. 13, Exs. N, O.) The

6   state thereby notified Owens that it was alleging a Serious Drug Offense as to every

7   count on which he was charged. (*Id.*) After being convicted on all 22 counts, Owens was

8   sentenced under § 3410 as to the six counts he asserts in this claim (Counts 3, 7, 8, 19,

9   20, and 21). (Doc. 13, Ex. NN.) Because Owens was given notice that the state was

10  pursuing a Serious Drug Offender allegation as to these counts, he fails to demonstrate

11  his sentence is illegal. As an additional matter, § 3419 is not applicable to convictions

12  pursuant to § 13-3407, which is the charge brought in Counts 3, 7, 8, 19, 20, and 21.

13       Because there is no merit to Owens's allegation that his sentence was illegal,

14  counsel was not ineffective for failing to challenge it. Owens's claim of IAC at trial and

15  on appeal is not substantial and also fails on the merits.

16       Claim 18

17       Owens alleges appellate counsel was ineffective in failing to raise a claim that his

18  constitutional rights were violated by the denial of requested jury instructions. Owens

19  alleges the instructions his counsel requested were necessary and counsel failed to pursue

20  the issue on appeal. In particular, he alleges the court should have given an instruction

21  based on *State v. Willits*, 393 P.2d 274 (1964), which would have provided for an

22  inference to be drawn against the state if it destroyed evidence important to the issues in

23  the case.

24       As to the *Willits* instruction, Owens argues:

25       The alleged weapons had been destroyed prior to trial. No testing had been
26       done by the state to determine if they met firearm definition. Prosecutor
         kept saying Thompson Machine gun was real, when in fact it was a toy and
27       finally an officer on the stand admitted it was a toy.

28  (Doc. 1 at 23.)

1    Owens was indicted on a charge of possession of a deadly weapon during the

2    commission of a felony offense (Count 5). During trial, Detective Jeff Rumsley testified

3    to locating six guns in Owens's rental house when executing a search warrant. (Doc. 13,

4    Ex. AA at 52.) He acknowledged that all of the guns had been destroyed. (*Id.* at 65-66.)

5    As to five of the guns (excluding the sixth gun, which was the alleged Thompson

6    machine gun), the detective testified that he was one hundred percent certain that they

7    were capable of expelling a projectile. (*Id.* at 71-72.) During closing arguments, the

8    prosecutor asked the jury not to consider the machine gun but to focus only on the five

9    guns Detective Rumsley testified he was certain were firearms. (*Id.*, Ex. DD at 34-35.)

10   Owens was convicted on Count 5.

11   To obtain a *Willits* instruction, a defendant must demonstrate that the destroyed

12   evidence "could have had a tendency to exonerate" him and he was prejudiced. *State v.*

13   *Glissendorf,* 329 P.3d 1049, 1052, 235 Ariz. 147, 150 (2014). With the exception of the

14   machine gun, Owens does not argue that the physical guns, or an ability to test them,

15   would have been potentially useful to his defense. Further, because there were five guns

16   that Owens does not challenge, only one of which was necessary for the charge in Count

17   5, he has not demonstrated that the destruction of the evidence caused him prejudice.

18   Because Owens was not entitled to a *Willits* instruction, his appellate counsel was not

19   ineffective for failing to raise such a claim on appeal.

20   To the extent Owens contends appellate counsel was ineffective for failing to

21   challenge the denial of all other instructions requested at trial, the claim fails. Owens has

22   not identified what instructions were denied, how he was prejudiced by the denial of

23   them, or the necessary elements for an ineffective assistance of counsel on appeal claim.

24   Owens's claim of IAC on appeal is not substantial and also fails on the merits.

25   <u>Claim 20</u>

26   Owens alleges his trial counsel was ineffective in advising him about the offered

27   plea deal and in failing to obtain a *Donald* hearing. In his Petition, Owens alleges:

28   > Petitioner was offered a plea of 18.5 to 23.5 years early on. Petitioner's trial
   > counsel Mr. Jones told Petitioner "That was the worst Petitioner could

receive if he lost everything and that the state would not be able to secure a conviction on the five counts of possession for sale of meth without physical evidence." . . . Trial attorney also told Petitioner he had legal authority to support his opinion. On attorney's advice Petitioner rejected plea. Just prior to trial a second plea capped at 15 years was offered by the state. Again trial counsel advised Petitioner the state would be unable to secure a conviction of possession for sale without physical evidence and he had legal authority to support his opinion. Petitioner asked trial counsel what he thought he was looking at and thought he was looking at 10-15 years. Again on the poor advice that the state wouldn't be able to secure a conviction without physical evidence Petitioner rejected the plea capped at 15 years . . . .

(Doc. 1 at 25.)

During Owens's second PCR proceeding, appointed counsel conducted a telephonic interview with Owens and trial counsel, Richard Jones. During the interview, Owens and Jones agreed that the first plea offer for eighteen to twenty-three years, made early in the case, was too much time. (Doc. 13, Ex. SSS, Ex. A at 2, 3-4 ("we discussed it and it was way too much").) Owens also stated that "the whole premise of not taking a plea agreement on was because we could not be convicted of possession for sale without drugs." (*Id.* at 8.) Owens and Jones spent a lot of time, prior to and contemporaneous with the plea offer, discussing the best defense as to each of the 22 counts, and Jones advised him that there was a "strong likelihood" that he would not be convicted of five of the six possession for sale charges because the state had no physical drugs as proof of the charges. (*Id.* at 5, 14-16.) Owens was aware that he could be sentenced to life as a serious drug offender, if convicted of three or more of those charges. (*Id.* at 13.) Jones averred that he never tells a client whether to take a plea, although he will advise if he thinks a plea makes sense, and he did not tell Owens that it was inconceivable he could convicted on a particular count. (*Id.* at 15.) Owens agreed with Jones that he thought he had a good defense to the possession for sale charges. (*Id.* at 16.)

During the PCR proceedings, Jones was unable to locate a written copy of a second plea offer. (*Id.* at 10-11.) Owens initially stated that it was for five to fifteen years. (*Id.* at 6.) Subsequently, he stated he only heard those numbers later and what he understood at the time was that the state offered him the option to cooperate and they would "work with" him. (*Id.* at 18, 20-21.) Jones agreed the plea might have been

conditioned on Owens turning state's evidence, but his unsupported recollection was that the offer was for 12-15 years. (*Id.* at 19-20.) He could not remember the substance of any conversation he and Owens had about it, only that they had discussed the offer just a few weeks before trial.[8] (*Id.* at 20.) During PCR proceedings, the State agreed that it possessed a fax cover page from September 2006, with a subject line of "Plea Agreement Attached." (Doc. 13, Ex. TTT at 3.)

The Court first disposes of Owens's claim regarding the alleged second plea offer. Owens is unable to establish prejudice as to a second plea because he is unable to prove the terms of such an offer. Counsel thinks it might have been 12-15 years, although he doesn't know the basis for that belief and he could not locate any supporting documentation. Owens stated that he never saw the second one but "everybody was saying" it was 5-15; at the time of the plea, he believed it was merely an offer by the prosecutor to "work with" him if he testified for the state. Without the terms of the plea, the Court cannot find that counsel's conduct was unreasonable or that Owens was prejudiced. At a minimum, prejudice requires showing that the sentence available under the plea was less severe than that imposed. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012).

As to the first plea, the Court examines whether trial counsel Jones's advice was objectively unreasonable. The Arizona courts have held that a counsel's performance is deficient regarding a plea if he provides erroneous advice or fails to give sufficient information to allow an informed decision whether to accept or reject a plea. *State v. Donald*, 10 P.3d 1193, 1200, 198 Ariz. 406, 413 (Ct. App. 2000). Here, the evidence demonstrates that Jones informed Owens of the terms of the plea offer and that some of the charges against him carried a possible life sentence. Owens did not dispute Jones's representation that they thoroughly discussed the available defenses to each claim and

---

[8] Owens attached to his Reply a March 6, 2015 declaration from trial counsel Jones. (Doc. 29 at 95.) This evidence can only be considered by the Court if Owens satisfies the standard for expanding the record pursuant to Rule 7(b) of the Rules Governing § 2254 Cases. Regardless, there is nothing in the 2015 declaration that would alter the Court's analysis.

assessed the plea offer. The critical question is not whether Jones's advice in hindsight was ultimately right or wrong, but "whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The Court finds that it was. Counsel offered a reasonable defense to the most serious charges. At the time of his second PCR proceeding, Owens still believed Jones's advice was legitimate and that he should not have been convicted of the possession for sale charges; that was a primary reason he thought the first plea offer was for too much time and he rejected it. (Doc. 13, Ex. SSS, Ex. A at 3-5.) As Jones stated, "we ended up losing all the pretrial stuff that we anticipated, hopefully prevailing on to kind of tailor the case. . . . obviously nothing that we did ended up working." (*Id.* at 5-6.) The Supreme Court holds that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." *Cooper*, 132 S. Ct. at 1391; *see also Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("Trial counsel was not constitutionally defective because he lacked a crystal ball," as an accurate prediction of the jury's behavior is not required); *Sophanthavong v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) ("[E]rroneous predictions regarding a sentence are deficient only if they constitute 'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'" (quoting *United States v. Keller,* 902 F.2d 1391, 1394 (9th Cir.1990)). Jones gave Owens the necessary information – the terms of the plea offer, the possible sentence if he lost at trial, and the available defenses – such that he could make an intelligent informed decision regarding the plea offer. That is all that is required. *See Turner*, 281 F.3d at 880-81; *Donald*, 10 P.3d at 1200, 198 Ariz. at 413. Therefore, Owens's claim of IAC during plea bargaining is not substantial and also fails on the merits.

Finally, the Court disposes of the remaining part of Owens's claim, in which he alleged trial counsel was ineffective for failing to request a *Donald* hearing. Arizona trial courts often have a hearing referred to as a "*Donald*" hearing, at which the court reviews the terms of an offered plea with a defendant. *See, e.g. State v. Meraz*, No. 1 CA-CR 06-

0899, 2007 WL 5187910, *1 (Ariz. Ct. App. 2007). However, a court only has an obligation to conduct a hearing pursuant to *Donald* during a PCR proceeding when a petitioner properly files a colorable claim that he received IAC during plea bargaining. *See State v. Rivera*, No. 2 CA-CR 2011-0255-PR, 2012 WL 983116, *2 (Ariz. Ct. App. 2012). There is no authority to suggest counsel has an obligation to request a *Donald* hearing to review the terms of a plea offer in open court. Therefore, this claim is not substantial and fails on the merits.

## MISCARRIAGE OF JUSTICE

Owens did not allege that there will be a miscarriage of justice if his defaulted claims are not addressed on the merits. To demonstrate a fundamental miscarriage of justice based on factual innocence, a petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To establish the requisite probability, the petitioner must demonstrate with new reliable evidence that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* at 324, 327. Nowhere in his filings has Owens presented new evidence or argued that he is actually innocent. Owens has not argued for or established a miscarriage of justice finding.

## MERITS ANALYSIS

### LEGAL STANDARDS FOR RELIEF UNDER THE AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a "highly deferential standard for evaluating state-court rulings' . . . demand[ing] that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1
2

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

4

5

6

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

7

8

9

10

11

12

13

14

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent

"unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as '"fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

<u>CLAIM 4</u>

Owens alleges the trial court's denial of his motion to suppress statements violated his *Miranda* and Due Process rights. Owens alleges Detectives Staten and Mawhinnery interviewed him on March 17, 2005, while he was being held in jail. Owens argues that he did not waive his right to remain silent. Further, he alleges the officers represented that they would not use what he said in the case for which he was currently in custody, but they violated the promise by bringing racketeering charges against him.

Owens raised this claim before the trial court and the judge took it under advisement. (Doc. 13, Ex. U; Ex. W at 8-24.) Subsequently, the court informed counsel that, after watching the DVD, Owens had affirmatively indicated a willingness to speak to the detectives. (*Id.*, Ex. Y at 162.) They agreed to discuss the issue of a promise as relevant to voluntariness later. (*Id.* at 162-63.) Neither counsel nor the court raised the issue again, and counsel did not object when the prosecutor offered the DVD as evidence at trial. (*Id.*, Ex. CC at 105-06.) The court denied this claim on appeal:

¶ 33 Although Owens first raised this issue in the trial court in a motion to suppress, the court never ruled on that motion. *See State v. Lujan,* 136 Ariz. 326, 328, 666 P.2d 71, 73 (1983) ("While the trial judge has the responsibility of ruling on pending motions, if an accused wants to rely on the objections raised in those motions he or she has the responsibility of bringing them to the court's attention and seeing that a record of the rulings makes its way to the reviewing court."). Moreover, when the state moved to admit the digital video recording of his interview, Owens, when asked by the court, stated he had no objection. Thus, Owens has "forfeit[ed] the right to obtain appellate relief unless [he] prove[s] that fundamental error occurred." *Martinez,* 210 Ariz. 578, n.2, 115 P.3d at 620 n.2.

¶ 34 At the beginning of the interview, Owens plainly waived his right to remain silent. "To satisfy *Miranda,* the State must show that appellant understood his rights and intelligently and knowingly relinquished those rights before custodial interrogation began." *State v. Tapia,* 159 Ariz. 284, 286-87, 767 P.2d 5, 7-8 (1988). Before the interview began, the interviewing officer advised Owens of his constitutional rights and asked Owens if he understood them. Owens nodded affirmatively. The officer then handed Owens a document and asked him if he wanted to talk about it. Owens responded, "Sure" and, when asked, admitted the document was in his handwriting. Owens identifies nothing in the record that suggests he did not understand his rights. *See id.*

¶ 35 After the interviewing officer asked Owens to "explain" the document, however, Owens stated: "I don't think I really want to talk about it." Thus, Owens reasons that he invoked his right to remain silent later in the interview and that the statements he subsequently made were therefore involuntary. Under Arizona law, when a defendant's assertion of his or her right to remain silent is "susceptible to more than one interpretation, the limit of permissible continuing interrogation immediately after the assertion would be for the sole purpose of ascertaining whether the defendant intended to invoke his right to silence." *State v. Finehout,* 136 Ariz. 226, 229, 665 P.2d 570, 573 (1983). We need not determine, however, whether the officers' failure to ascertain whether Owens, by his equivocal statement, intended to invoke his right to silence required the trial court to suppress Owens's statements to police because Owens has failed to demonstrate any error prejudiced him. *See Henderson,* 210 Ariz. 561, ¶ 20, 115 P.3d at 607.

¶ 36 The document in question was apparently a map with written instructions Owens had given to another inmate, S., while both were in jail. The map was relevant to the charges of solicitation of kidnapping and murder. During the interview, Owens admitted he had made the map and

written the instructions and that the instructions referred to debts owed to him by the individuals described. Owens asserted, at different points in the interview, that the map and instructions were intended for Greenwell or another individual. Owens also stated that whoever was to collect his debts was to tell the individuals to pay the money so Owens could hire a lawyer or Owens would give the police information about them.

¶ 37 Assuming those statements should have been suppressed, there was ample other evidence regarding the map and in support of the solicitation charges. As the state correctly points out, Owens admitted he had made the map and written the instructions before he stated he did not "really want to talk about" the matter further. Furthermore, S. testified at trial that Owens had given him the map and instructed him to collect the debts, by force if necessary-including kidnapping and murder. Additionally, another inmate testified Owens had paid his bond for release from jail so that he could forcibly collect the debts for Owens. To demonstrate prejudice, Owens "must show that a reasonable jury, absent any error in admitting [his statement to police], could have reached a different result." *Salazar,* 216 Ariz. 316, ¶ 12, 166 P.3d at 110. Accordingly, given the substantial evidence against Owens on the solicitation counts, we cannot say the arguably erroneous admission of a portion of his statement prejudiced him. We therefore find no error in the trial court's admission of this statement.

(*Id.*, Ex. UU.)

There are two relevant points in the interview with respect to Owens's right to remain silent. The first relevant time period is that immediately following the detectives advising Owens of his rights under *Miranda*. The second one is later in the interview when Owens stated, in response to a question about the meaning of the map, "I don't think I want to talk about it."

The trial court and the appellate court found that Owens waived his right to remain silent at the beginning of the interview (after being advised of his *Miranda* rights) by stating "sure" when asked if he wanted to discuss a document. (Doc. 13, Ex. Y at 162; Ex. UU ¶ 34.) That fact finding is entitled to deference unless rebutted by clear and convincing evidence. Owens has presented no evidence to rebut that finding. Therefore,

1    this Court accepts as fact that, after the detectives advised Owens of his *Miranda* rights

2    he affirmatively waived his right to remain silent.[9]

3         As to the second relevant time period, the court of appeals found that Owens

4    statement, "I don't think I really want to talk about it," was equivocal. The Supreme

5    Court holds that the invocation of one's right to remain silent must be unambiguous and

6    unequivocal in order to require the cessation of an interrogation. *See Berghuis v.*

7    *Thompkins*, 560 U.S. 370, 381-82 (2010) (finding silence is not an unambiguous

8    invocation of right to remain silent) (citing *Davis v. United States*, 512 U.S. 452, 461-62

9    (1994)).

10        Finally, the Court finds the detectives did not make a promise rendering Owens's

11   statement involuntary. The officers informed Owens that the topic of their questioning

12   was not the substance of the charges on which he was being held. That was accurate,

13   although additional charges were added to the same case based, in part, on the substance

14   of the interrogation. The officers did not promise not to use his statements against him

15   nor promise any other benefit.

16        The court of appeal's denial of Owens's claim was not an unreasonable

17   application of clearly established Supreme Court law.

18   <u>CLAIM 7</u>

19        Owens alleges trial counsel was ineffective for not objecting to the prosecutor

20   vouching for the credibility of cooperating witnesses, who testified pursuant to plea

21   agreements. Owens also alleges appellate counsel failed to raise this issue on appeal.

22   Finally, Owens asserts trial and appellate counsel were ineffective for failing to challenge

23   illegal "truthfulness" provisions in the cooperating witnesses' plea agreements.

24        The cooperating witnesses' plea agreements contained the following language:

25            The Defendant agrees to cooperate with authorities in investigating
26        and prosecuting those criminals and organizations of which she is aware

_____

27   [9] The Court does not possess a copy of the DVD or an official transcript of it. (*See*
     Doc. 13 at 52 n.40.) Because Owens does not contest Respondents' representation of
28   what was said in the interview, the Court relies upon Respondents' transcription of the
     relevant portions (*id.* at 50-52 & n.39) and the facts as found by the state courts.

- 41 -

including testifying fully, truthfully, and completely in the prosecution of any co-defendants or co-conspirators.

. . . .

Should the State in its sole discretion determine the Defendant has been untruthful or uncooperative the State may in its sole discretion elect to declare this agreement, null and void thus placing the parties in the same position they were in before this agreement was entered or the State may elect to advise the Court of its conclusion for the Court to consider in sentencing the Defendant.

Should the Court make the finding that the Defendant testified untruthfully or otherwise falsely incriminated others, the Court may order this agreement to be set aside, placing the parties in the same position they were before the agreement was entered, or may consider its findings in sentencing the Defendant under this agreement.

(Doc. 13, Ex. III-1, Ex. B at 2.)

**Vouching**

Trial counsel filed a motion in limine to preclude vouching by the prosecutor with respect to cooperating witnesses. (Doc. 13, Ex. R.) Counsel argued that in the trial of one of Owens's co-defendants, the prosecutor elicited testimony from cooperating witnesses that Owens's trial judge was the ultimate arbiter of the truthfulness provision in their plea agreements and he also was the judge that would sentence the cooperating witnesses. (*Id.* at 1.) When the judge then allowed the witnesses to testify, counsel argued this suggested the judge sanctioned the truthfulness of their testimony. (*Id.* at 2.) After argument, the trial judge ruled that the prosecutor could elicit from a witness that she promised to tell the truth in order to get the deal offered in her plea agreement, but it would go too far to say "the judge is watching you and if you lie you're going to get it." (Doc. 13, Ex. W at 28-29.) The prosecutor acknowledged the ruling, agreed not to offer the actual agreements, but expressed intent to review orally the substantive truthfulness provisions with each witness. (*Id.* at 30.) The court then concluded that he and the parties understood the parameters of his ruling. (*Id.* at 32.)

Counsel for a co-defendant argued:

I would like to hear it on the record that invoking this Court, Judge Cruikshank by name . . .[t]hat's kind of alarming because I think it puts you in a position . . . of the jury expectation you're going to lower the boom if something askew happens, and if you don't lower the boom; therefore,

everything is, you know, you sanctioned it as being, you know, a sterling version of the truth.

(*Id.* at 36.) The judge ultimately stated, "the formulation of the examination where I am mentioned and I'm watching, and I'm going to decide . . . if the person complied with the plea or told the truth or not, just don't do that. If you think some door has been kicked wide open to that, approach the bench and we'll talk about it." (*Id.* at 40.)

Before the first cooperating witness testified at trial, the prosecutor asked to approach with Owens's counsel. (Doc. 13, Ex. Z at 38.) The prosecutor confirmed his intent to orally review, without elaboration, all of the operative terms and consequences of the plea agreements with each cooperating witness. (*Id.* at 38-40.) Without objection from defense counsel, the court approved that approach. (*Id.*)

In his first PCR proceeding, Owens argued that the prosecutor violated the judge's ruling and counsel failed to object. The court determined the prosecutor's questioning did not amount to vouching. The court reviewed the testimony of the relevant cooperating witnesses and found that it included the following paraphrasing of the plea agreement:

> If the Court makes the same determination, even if [the State] think[s] you're being truthful, if the Court makes the same determination, that you have been uncooperative or untruthful, the Court can do the same thing, tear the agreement up, put you back to where you were before or sentence you with that information.

(Doc. 13, Ex. HHH at 6.) The PCR court concluded:

> [T]he Court does not believe that this statement, viewed in the context of the entire review of the plea terms, suggested to the jury that "Judge Cruikshank" was allowing the witnesses to testify or that he approved of their testimony because he had knowledge of the truthfulness of their testimony for which he could vouch. . . . The prosecutor's statements did not place the prestige of the government behind the witnesses. He did not imply that the witnesses were credible just because the state had called them to testify. . . . Nor did the prosecutor's statements suggest the existence of information not presented at trial.
>
>           . . . .
>
> the Court concludes that the prosecutor was not vouching but was simply demonstrating that the witnesses had no motive to testify falsely. The Court does not believe that any reasonable juror would interpret the prosecutor's statements as placing the prestige of the state or the Court behind the witnesses' testimony.

(*Id.*) The appellate court affirmed this ruling. (*Id.*, Ex. LLL at 7.)

1    Owens has failed to demonstrate that he suffered prejudice from the actions of his

2    trial or appellate counsel with respect to this issue. The suggestion of prejudice by Owens

3    is that the cooperating witnesses' testimony was "most of the state's evidence." (Doc. 1 at

4    17.) While it is true that there was substantial evidence presented by cooperating

5    witnesses, it was not all of the relevant evidence. There was substantial other evidence

6    presented against Owens, which was both independent and corroborative of the

7    cooperating witnesses' testimony. Regardless, the PCR court (which was the same judge

8    that sat the trial) and appellate court found the prosecutor was not vouching. Therefore,

9    there is not a reasonable probability that an objection by trial counsel or a claim raised on

10   appeal would have been successful.

11   In the reply brief, Owens relies upon the testimony of Matthew McDonald as his

12   sole example of dishonest testimony offered by a cooperating witness subject to a plea

13   agreement. McDonald testified regarding a letter Owens handed him while they were

14   both in jail. (Doc. 13, Ex. CC at 138-77.) The first page of the letter stated "Mitch

15   Thomas and Deb, Chris Ellis, I don't think they should testify, if you know what I mean."

16   (*Id.* at 146.) Owens argues that McDonald's testimony about the letter on redirect was

17   coerced by the prosecutor and his power over McDonald's plea deal.

18   The Court has reviewed the entirety of McDonald's trial testimony, as well as

19   Owens's Reply and the exhibits attached thereto (excerpts of pre-trial interviews of

20   McDonald). The Court finds Owens's argument is not supported by the evidence.

21   McDonald never substantively changed his testimony. He consistently stated that when

22   Owens handed him the letter they discussed only the fact that it contained a phone

23   number McDonald could use to make three way calls. (Doc. 13, Ex. CC at 142-43, 174,

24   175, 176; Doc. 29 at 79-80, 85-86, 91-92.) *Before trial* and on re-direct, McDonald also

25   stated that Owens had passed the letter around to others in an effort to persuade someone

26   to prevent the victims identified in the letter (Mitch, Deb, and Chris) from testifying.

27   (Doc. 29 at 81; Doc. 13, Ex. CC at 175.) McDonald never identified Owens as the source

28   of that information. Further, his testimony on redirect did not contradict his testimony

1    that Owens did not discuss that portion of the letter with him. Owens has not established

2    that McDonald testified falsely nor that he was prejudiced by this testimony or the

3    testimony of the other cooperating witnesses.

4        Owens has the burden to affirmatively prove prejudice and has failed to do so.

5    Ultimately, he has not established that the state courts' denial of this claim was

6    objectively unreasonable.

7        *Illegal Provisions in Cooperating Witnesses' Plea Agreements*

8        Owens objects to the provision in the plea agreements providing that the State

9    could unilaterally withdraw from the agreement if it determined the witness was

10   untruthful. The Arizona Court of Appeals held that a judicially accepted plea agreement

11   can be set aside only with court approval. (Doc. 13, Ex. LLL at 5-6.) However, prior to a

12   plea agreement being accepted by the court, the State may unilaterally withdraw from the

13   agreement. (*Id.* at 6 (citing Ariz. R. Crim. P. 17.4(b)).) The court concluded, therefore,

14   the term was not unlawful and counsel was not ineffective for failing to object to it.[10]

15       Owens makes the related argument that the truthfulness provisions of the plea

16   agreements would cause the witnesses to testify in a way that would please the State and

17   the court, even if it was not truthful. The PCR and appellate courts rejected this argument,

18   finding the provisions did not "compel the witnesses to disregard their oaths of

19   truthfulness or bind them to a particular script or result." (Doc. 13, Ex. HHH at 10; Ex.

20   LLL at 6.) Further, the courts found the plea agreements would not inhibit the jury's

21   ability to judge the witnesses' credibility, particularly because the witnesses were subject

22   to cross-examination. (*Id.*, Ex. HHH at 10; Ex. LLL at 6.) Therefore, the courts

23   determined counsel was not ineffective for failing to object to the terms of the plea

24   agreements.

25

26   [10] The appellate court noted that it had no documentation that the cooperating
     witnesses' plea agreements had been accepted by the court at the time of their testimony.
27   In his petition for review, Owens clarified with supporting documentation that the
     agreements had been accepted by the court prior to their testimony. (Doc. 13, Ex. III-I,
28   Ex. B-G.) Regardless, it was not erroneous for the agreement to provide that the State
     could unilaterally withdraw the agreement because that was a true statement for a period
     of time – prior to the court accepting the plea.

1    These determinations were not objectively unreasonable under *Strickland*. It is

2    evident that if trial or appellate counsel had raised these claims, there was not a

3    reasonable likelihood there would have been a different result. The trial and appellate

4    courts have confirmed that these claims did not have a reasonable likelihood of success.

5    <u>CLAIM 8</u>

6    Owens alleges trial counsel was ineffective for not objecting to the court's failure

7    to bifurcate the serious drug offenses from the other charges. Owens also alleges

8    appellate counsel was ineffective for failing to raise this claim.

9    The PCR court concluded that, under Arizona law, it was error for the trial court

10   not to bifurcate the serious drug offender allegations from the substantive drug offenses

11   but it was not structural error. (Doc. 13, Ex. HHH at 12.) The court of appeals adopted

12   the PCR court's ruling. (*Id.*, Ex. LLL.)

13   In light of the state court's holding – that failing to bifurcate amounted to error,

14   Owens has a strong case that trial and appellate counsel performed deficiently by not

15   raising this issue. The question is whether he was prejudiced by the failure. Owens's only

16   argument for prejudice is his contention that the error was structural and the trial court or

17   appellate court had no discretion but to grant a bifurcated trial.

18   The Supreme Court holds that structural error requiring automatic reversal is rare,

19   it is one that "infects the entire trial process," rendering the proceeding fundamentally

20   unfair. *Glebe v. Frost*, 135 S.Ct. 429, 430-31 (2014) (collecting grounds for structural

21   error – denial of counsel, biased trial judge, denial of self-representation or a public trial,

22   defective reasonable-doubt instruction) (quoting *Neder v. United States*, 527 U.S. 1, 8

23   (1999)). "If the defendant had counsel and was tried by an impartial adjudicator, there is

24   a strong presumption that any other [constitutional] errors that may have occurred are

25   subject to harmless-error analysis." *Rose v. Clark*, 478 U.S. 570, 579 (1986). Neither

26   Owens, Respondents, nor the Court have identified a Supreme Court case finding that a

27   failure to bifurcate particular counts would amount to structural error. The state court's

28

1  finding of no structural error was not contrary to or an unreasonable application of clearly

2  established Supreme court law.

3      Because Owens's only prejudice argument was premised on a finding of structural

4  error, he has failed to establish prejudice. The court of appeal's denial of this claim was

5  not an unreasonable application of Supreme Court law.

6                              **EVIDENTIARY HEARING**

7      Owens requests a hearing on Claims 7-22. The governing rules require the Court

8  to "review the answer, any transcripts and records of state-court proceedings, and any

9  materials submitted under Rule 7 to determine whether an evidentiary hearing is

10 warranted." Rule 8 of the Rules Governing Section 2254 Cases. After thoroughly

11 reviewing Owens's Petition, Reply, and the state court record, the Court has determined

12 that Owens is not entitled to relief on Claims 1-13 and 15-22. Therefore, further

13 evidentiary development of those claims is not warranted. Based on the record before the

14 Court and without additional factual development, the Court finds relief is warranted on

15 Claim 14.

16                         **CONCLUSION AND RECOMMENDATION**

17     Claim 1 is barred from review in this Court by *Stone*. Claims 2, 3, 5, 6, 9-13, 15-

18 18, and 20 are procedurally defaulted; Owens has not established cause and prejudice or a

19 fundamental miscarriage of justice to overcome the defaults. Additionally, Claims 6, 11,

20 20, and the IAC portions of Claims 9, 12, 13, and 15-18 fail on the merits. Claims 4, 7,

21 and 8 are properly exhausted but without merit. Claims 19, 21 and 22 are not cognizable,

22 in part, and without merit, in part. Based on the foregoing, the Magistrate Judge

23 recommends the District Court deny Claims 1-13 and 15-22.

24     Claim 14 is procedurally defaulted; however, Owens has established cause and

25 prejudice to overcome the default. The Court finds Owens is entitled to relief on Claim

26 14. The Magistrate Judge recommends the District Court grant the writ as to this claim,

27 which would overturn Owens's conviction and sentence on Count 7.

28

1

2

3

4

5

6

      Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV 14-2443-TUC-DCB**.

7

      Dated this 2nd day of May, 2016.

8

9

10

11

12

D. Thomas Ferraro
United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28